UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KATHLENE VELTKAMP,<br><br>Petitioner,<br><br>v.<br><br>NANCY A. BERRYHILL, Acting Commissioner of Social Security,<br><br>Respondent. | No. 1:17-cv-00580-GSA<br><br>**ORDER DIRECTING ENTRY OF JUDGMENT IN FAVOR OF COMMISSIONER OF SOCIAL SECURITY AND AGAINST PLAINTIFF** |

I.  **Introduction**

Plaintiff Kathlene Veltkamp ("Plaintiff") seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner" or "Defendant") denying her application for disability insurance benefits pursuant to Title II and supplemental security income pursuant to Title XVI of the Social Security Act. The matter is currently before the Court on the parties' briefs which were submitted without oral argument to the Honorable Gary S. Austin, United States Magistrate Judge.[1] *See* Docs. 33 and 34. Having reviewed the record as a whole, the Court finds that the ALJ's decision is supported by substantial evidence. Accordingly, Plaintiff's appeal is denied.

---

[1] The parties consented to the jurisdiction of the United States Magistrate Judge. *See* Docs. 17 and 19.

1

## II. Procedural Background

Plaintiff has multiple prior applications for disability benefits. AR 59. On April 19, 1992, Plaintiff was found disabled, but her benefits ceased on November 1, 1997, after her condition improved. AR 59. In a hearing decision dated December 23, 1998, the state agency applied *Chavez* to the decision and found that Plaintiff lacked credibility and was able to perform the full range of light work. AR 59. Plaintiff also sought benefits in 2004, but withdrew her request for an administrative hearing. AR 59.

On January 31, 2013, Plaintiff filed applications for disability insurance benefits[2] and supplemental security income alleging disability beginning April 1, 2003. AR 15. She alleged degenerative disc disorder. AR 55. The Commissioner denied the applications initially on July 22, 2013, and upon reconsideration on March 12, 2014. AR 20. On March 21, 2014, Plaintiff filed a timely request for a hearing before an Administrative Law Judge. AR 20.

Administrative Law Judge Vincent Misenti presided over an administrative hearing on October 14, 2015. AR 29-54. Plaintiff appeared without representation and testified. AR 29. Impartial vocational expert Cheryl Chandler (the "VE") also testified. AR 30.

On November 23, 2015, the ALJ denied Plaintiff's application. AR 15-24. The Appeals Council denied review on April 6, 2017. AR 1-4. On April 26, 2017, Plaintiff filed a complaint in this Court. Doc. 1.

## III. Factual Background

### A. Plaintiff's Testimony and Reports

#### 1. Administrative Hearing Testimony

Since 1992 when Plaintiff (born February 6, 1959) injured her back in a fall at work, she has experienced chronic lower back pain. AR 36. At her October 2015 hearing, Plaintiff explained, "now I'm getting numbness and tingling in my legs [and] can't sit or stand for very long." AR 36. Plaintiff has not attempted to work since April 1, 2003. AR 35.

Plaintiff completed a GED. AR 35. She had a driver's license and drove about once a week. AR 35. She did not know how to use a computer. AR 44.

---

[2] The last date on which Plaintiff was insured was June 30, 2004. AR 33

1    Plaintiff's treatment consisted of regular appointments for pain management. AR 38. She took morphine twice daily. AR 37. Her doctor twice administered injections but only the first injection was helpful. AR 37. She participated in physical therapy for about six months four or five years before the hearing. AR 38. Surgery was not an option. AR 39. One physician explained that Plaintiff's condition "wasn't severe enough," and another warned her of possible paralysis. AR 39.

Plaintiff was able to sit and stand about ten minutes at a time. AR 42. To stand she needed either her cane or a surface to hold on to. AR 43. Plaintiff had walked with a cane, prescribed by her doctor, for about four years. AR 39. She could lift about two pounds or half a gallon of milk.[3] AR 43.

Plaintiff slept about six hours each night but her sleep was frequently interrupted by pain. AR 41. She was able to shop for groceries, run errands, cook the evening meal, wash dishes and sometimes do laundry. AR 41-42. Her boyfriend, with whom she lived, performed all other household chores such as vacuuming and mopping, making the bed, dusting, taking out the trash, and general household cleaning. AR 41-42.

### 2. Exertion Report

On April 17, 2013, Plaintiff completed an exertion report in which she complained of constant lower back pain, numbness in her right leg and both feet, shortness of breath, wheezing and coughing. AR 199. She was able to do light housework, including doing dishes, making the bed, cooking, laundry, cleaning kitchen appliances and bathrooms, dusting and vacuuming. AR 199. She was able to walk 60 feet to the mailbox, traversing two steps, while using her cane. AR 199. Plaintiff could lift books, toiletries, clothing, small bags of groceries, a gallon of milk and her laundry basket. AR 200. She shopped for groceries three times weekly. AR 200. She could drive an automatic car for about thirty minutes, and a manual shift car with difficulty. AR 200. Plaintiff needed to rest every ten to fifteen minutes. AR 201. She reported difficulty getting in and out of a bathtub and inability to balance a bicycle. AR 201.

---

[3] According to the USDA, a gallon of milk weighs approximately 8.6 pounds. https://www.reference.com/science/much-one-gallon-milk-weigh-popunds-542154c14a249d4c (accessed January 24, 2019).

### 3. Asthma Questionnaire

In an adult asthma questionnaire, Plaintiff reported occasional asthma attacks, which were treated with medication. AR 205. Plaintiff had never been to an emergency room for treatment of her asthma. AR 206.

### 4. Adult Function Report

In an adult function report completed October 28, 2013, Plaintiff described daily activities including household care and errands. AR 228. She showered using a shower chair and grab bars installed by her boyfriend. AR 229. During the night, she awakened whenever she moved. AR 229. Her impairments affected her ability to lift, squat, bend, stand, reach, walk, sit, kneel, climb stairs, concentrate, understand and follow instructions. AR 233.

Unable to stand for long periods of time, Plaintiff's cooking included light fare such as soup, salads, sandwiches and frozen dinners. AR 230. She could do light housework and laundry. AR 230. She did not do yard work due to "constant, extreme pain." AR 231.

Plaintiff enjoyed reading, sewing, watching television and listening to music. AR 232. She regularly went to church, the library and the grocery store. AR 232.

## B. Medical Records

X-rays of Plaintiff's lumbosacral spine taken on March 21, 1997, indicated normal alignment, well maintained disc spaces, a small osteophyte along the superior aspect of L4, and narrowing of the L5-S1 facets bilaterally. AR 281. No fractures or dislocations were observed. AR 281. Radiologist Mariela Resendes, M.D., opined that Plaintiff had minimal degenerative changes to her lumbosacral spine. AR 281.

In a radiology report dated April 21, 2008, Hans Hildebrandt, M.D. noted that Plaintiff had reported low back pain and right leg numbness since 1992. AR 342. Dr. Hildebrandt diagnosed small multilevel broad-based disc bulges without central spinal stenosis and facet joint hypertrophy at L4-5 and L3-4 which resulted in mild neural foraminal narrowing. AR 342.

Between October 9, 2008 and February 3, 2009, Plaintiff participated in 19 physical therapy appointments. AR 345. Plaintiff reported a pain level of 5/10, a tingling sensation in the

///

right lower extremity, and waking two to three times nightly with pain.  AR 345.  Physical therapy records are included in the record at AR 345-56.

From March 29, 2010, Plaintiff was treated for chronic lower back pain at Community Medical Center.  AR 357.  Treatment notes indicate that Plaintiff was receiving adequate pain control on a combination of medications including MS Contin and ibuprofen.[4]  AR 357.

On April 19, 2010, Philippe Vanderschelden conducted magnetic resonance imaging of Plaintiff's brain because of dizziness, unsteady gait, memory loss, a history of trauma and assault, and cervical carcinoma.  AR 344.  Dr. Vanderschelden reported an unremarkable brain MRI with no intracranial metastatic lesions observed and minimal inflammatory mucosal disease within the left maxillary sinus.  AR 344.

At multiple appointments from 2010 through 2013, Plaintiff told her pain management physician at Community Medical Center that she had experienced a significant decrease in pain with her current medications.  AR 361, 365, 371, 375, 377, 390, 395, 404, 411, 414, 423.  Although the intensity of her pain varied over time, Plaintiff consistently described low back pain radiating to her right leg, and numbness of the right leg.  In addition to medications for other conditions, Plaintiff took morphine (MS Contin) and ibuprofen for her pain.  At each appointment Plaintiff's physician noted that she was compliant with her prescriptions and tolerated the medications well.

On October 1, 2010, Plaintiff again complained of memory loss and forgetfulness, adding that forgetfulness had been a life-long problem.  AR 369.  On May 18, 2011, Plaintiff was accompanied by her boyfriend who reported that Plaintiff had difficulty remembering short-term events and frequently got lost.  AR 383.   Plaintiff's boyfriend opined that Plaintiff's condition had been stable for the past eight years.  AR 383.  He also indicated that Plaintiff was nervous and anxious.  AR 383.  Plaintiff reported that she had previously experienced depression and requested a follow-up with a psychiatrist for her anxiety and depression.  AR 383.  Her physician, Panos Danopoulos, M.D., attributed Plaintiff's memory problems to depression.  AR 384.

///

---

[4] A third medication is illegible.  AR 357.

Although Dr. Danopoulos referred Plaintiff to a psychiatrist, no record of the consultation, if any, is included in the record.

An MRI of Plaintiff's back performed April 26, 2014 revealed interval progression of degenerative changes with no central canal stenosis. AR 468.

The record includes treatment notes from Chestnut Medical Group of Fresno from July 2014 through October 2015. AR 446-60, 485-95. Although handwritten portions of these notes are mostly illegible, the records both noted Plaintiff's chronic back pain and indicated that all bodily systems, including musculoskeletal and psychiatric, are within normal limits. In August 2014, Parwan Sood, M.D., prescribed a cane. AR 485.

On December 23, 2014, Omolade Maurice-Diya, of Central Valley Pain Management, examined Plaintiff and diagnosed lumbar facet joint arthropathy. AR 466-67. Plaintiff complained of numbness in her legs and lower back pain rated 5/10. AR 467. The examination revealed lumbar and paraspinal tenderness, rigidity and guarding. AR 467. Dr. Maurice-Diya recommended a referral to a neurosurgeon for a surgical evaluation, continuation of existing pain medications, and home therapy consisting of mild massage, pain cream and warm packs. AR 467.

On June 22, 2015, pain management physician J.R. Grandhe, M.D., reported that Plaintiff had good but temporary response to the administration of an epidural series and a facet block series of injections for pain management. AR 276.

**IV.     Standard of Review**

Pursuant to 42 U.S.C. §405(g), this court has the authority to review a decision by the Commissioner denying a claimant disability benefits. "This court may set aside the Commissioner's denial of disability insurance benefits when the ALJ's findings are based on legal error or are not supported by substantial evidence in the record as a whole." *Tackett v. Apfel*, 180 F.3d 1094, 1097 (9th Cir. 1999) (citations omitted). Substantial evidence is evidence within the record that could lead a reasonable mind to accept a conclusion regarding disability status. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971). It is more than a scintilla, but less than a preponderance. *See Saelee v. Chater*, 94 F.3d 520, 522 (9th Cir. 1996) (internal citation

omitted). When performing this analysis, the court must "consider the entire record as a whole and may not affirm simply by isolating a specific quantum of supporting evidence." *Robbins v. Social Security Admin.*, 466 F.3d 880, 882 (9th Cir. 2006) (citations and internal quotation marks omitted).

If the evidence reasonably could support two conclusions, the court "may not substitute its judgment for that of the Commissioner" and must affirm the decision. *Jamerson v. Chater*, 112 F.3d 1064, 1066 (9th Cir. 1997) (citation omitted). "[T]he court will not reverse an ALJ's decision for harmless error, which exists when it is clear from the record that the ALJ's error was inconsequential to the ultimate nondisability determination." *Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir. 2008) (citations and internal quotation marks omitted).

## V. The Disability Standard

> To qualify for benefits under the Social Security Act, a plaintiff must establish that he or she is unable to engage in substantial gainful activity due to a medically determinable physical or mental impairment that has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. § 1382c(a)(3)(A). An individual shall be considered to have a disability only if . . . his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work, but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. §1382c(a)(3)(B).

To achieve uniformity in the decision-making process, the Commissioner has established a sequential five-step process for evaluating a claimant's alleged disability. 20 C.F.R. §§ 416.920(a)-(f). The ALJ proceeds through the steps and stops upon reaching a dispositive finding that the claimant is or is not disabled. 20 C.F.R. §§ 416.927, 416.929.

Specifically, the ALJ is required to determine: (1) whether a claimant engaged in substantial gainful activity during the period of alleged disability, (2) whether the claimant had medically determinable "severe impairments," (3) whether these impairments meet or are medically equivalent to one of the listed impairments set forth in 20 C.F.R. § 404, Subpart P, Appendix 1, (4) whether the claimant retained the residual functional capacity ("RFC") to

///

perform his past relevant work, and (5) whether the claimant had the ability to perform other jobs existing in significant numbers at the national and regional level. 20 C.F.R. § 416.920(a)-(f).

In addition, when an applicant has one or more previous denials of applications for disability benefits, as Plaintiff does in this case, he or she must overcome a presumption of nondisability. The principles of *res judicata* apply to administrative decisions, although the doctrine is less rigidly applied to administrative proceedings than in court. *Chavez v. Bowen,* 844 F.2d 691, 693 (9th Cir. 1988); *Gregory v. Bowen,* 844 F.2d 664, 666 (9th Cir. 1988).

Social Security Acquiescence Ruling ("SSR") 97–4(9), adopting *Chavez,* applies to cases involving a subsequent disability claim with an unadjudicated period arising under the same title of the Social Security Act as a prior claim in which there has been a final administrative decision that the claimant is not disabled. A previous final determination of nondisability creates a presumption of continuing nondisability in the unadjudicated period. *Lester v. Chater,* 81 F.3d 821, 827 (9th Cir. 1995). The presumption may be overcome by a showing of changed circumstances, such as new and material changes to the claimant's RFC, age, education, or work experience. *Id.* at 827–28; *Chavez,* 844 F.2d at 693.

### VI. **Summary of the ALJ's Decision**

The ALJ did not acknowledge Plaintiff's prior applications, SSR 97-4(9) or *Chavez*. As a result, he did not explicitly state whether changed circumstances overcame the presumption of changed circumstances.

Using the Social Security Administration's five-step sequential evaluation process, the ALJ determined that Plaintiff did not meet the disability standard. AR 15-24. The ALJ found that Plaintiff had not worked since the alleged onset date of April 1, 2003. AR 17. Plaintiff had a single serious impairment: degenerative disc disease. AR 17. The severe impairment did not meet or medically equal any of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925. 416.926). AR 19.

The ALJ concluded that Plaintiff had the residual functional capacity to perform medium work as defined in 20 C.F.R. §§ 404.1567(c) and 416.967(c), except that she was limited to

frequent climbing of ramps and stairs, never climbing ladders, ropes or scaffolds, and frequent balancing, stooping, kneeling, crouching and crawling. AR 20. She should not work around unprotected heights or moving mechanical parts and occasional commercial driving. AR 20. Plaintiff is capable of performing her past relevant work as a router and automobile rental clerk. AR 22. Accordingly, the ALJ found that Plaintiff was not disabled from the alleged onset date April 1, 2003, through the date of the hearing decision. AR 24.

### VII. <u>The ALJ Did Not Err in Failing to Characterize Plaintiff's Mental Impairments as Severe</u>

Plaintiff contends that the ALJ erred in failing to categorize her mental impairments as severe at step two. Defendant counters that the ALJ did not deny Plaintiff's application by finding Plaintiff's mental health impairments not severe at step two. The Court finds that the ALJ appropriately applied the regulations and existing case law in his analysis of Plaintiff's alleged mental impairments.

At step two, the Commissioner determines whether the claimant has a medically severe impairment or combination of impairments. *Bowen v. Yuckert*, 482 U.S. 137, 140-41 (1987); 20 C.F.R. §416.920(a)(4)(ii). An impairment is a medically determinable physical or mental impairment or combination of physical or mental impairments. 20 C.F.R. § 416.902(f). If a claimant does not have an impairment or combination of impairments which significantly limit the claimant's physical or mental ability to do basic work activities, the Commissioner will find that the claimant does not have a severe impairment. 20 C.F.R. § 416.920(c).

"The step-two inquiry is a de minimus screening device to dispose of groundless claims." *Smolen v. Chater*, 80 F.3d 1273, 1290 (9th Cir. 1996). "It is not meant to identify the impairments that should be taken into account when determining the RFC." *Buck v. Berryhill*, 869 F.3d 1040, 1048-49 (9th Cir. 2017). An impairment or combination of impairments can be found 'not severe' only if the evidence establishes a slight abnormality that has no more than a minimal effect on an individual[']s ability to work." *Smolen*, 80 F.3d at 1290; SSR 85-28. "[T]he severity regulation is to do no 'more than allow the Secretary to deny benefits summarily to those applicants with impairments of a minimal nature which could never prevent a person

from working.'" SSR 85-28 (quoting *Baeder v. Heckler*, No. 84-5663 (3d Cir. July 24, 1985)). In this case, the ALJ found that Plaintiff's depression and memory loss caused no more than minimal limitation of Plaintiff's ability to perform basic mental work activities, rendering the impairments not severe. AR 18.

To conclude that Plaintiff's memory loss was not severe, the ALJ analyzed Plaintiff's medical record as a whole. In April 2010 following Plaintiff's complaints of memory loss, Philippe Vanderschelden conducted magnetic resonance imaging of Plaintiff's brain and reported that Plaintiff's brain was unremarkable with no intracranial metastatic lesions. Following Plaintiff's renewed complaints of memory loss in 2010 and 2011, Plaintiff told Dr. Danopoulos that she had previously experienced depression and requested a referral for a psychiatric evaluation. Although the record does not indicate that Plaintiff ever pursued the psychiatric referral, Dr. Danopoulos observed that a prescription antidepressant stabilized Plaintiff's memory and improved her mood. Treatment notes of Chestnut Medical Group of Fresno from July 2014 through October 2015, indicated that Plaintiff's mental health was within normal limits. The medical records indicated that Plaintiff had no psychiatric hospitalization, suicide attempts or formal mental health treatment since the alleged onset date. Accordingly, the ALJ agreed with the agency physicians who had determined that Plaintiff had no medically determinable mental impairment.

When evaluating a claimant's alleged mental impairment, an ALJ must analyze the four broad functional areas for evaluating mental disorders set forth in 20 C.F.R. Part 404. Subpart P, Appendix 1, § 12.00C. In addition to the physical ability to perform certain enumerated tasks, basic work activities require a claimant to be able to (1) understand, carry out and remember simple instructions; (2) use judgment; (3) respond appropriately to supervision, co-workers and usual work situations; and (4) deal with changes in a routine work setting. 20 C.F.R. § 404.1522(b) and 416.922(b). The regulations provide: "If we rate the degrees of your [mental] limitation as 'none' or 'mild,' we will generally conclude that your impairment(s) is not severe, unless the evidence otherwise indicates that there is more than a minimal limitation in your ability to do basic work activities (see § 404.1522)." 20 C.F.R. §§ 404.1520a(d)(1) and 416.920a(d)(1).

The ALJ analyzed Plaintiff's impairments using the regulatory requirements:

> The first functional area is activities of daily living. In this area, the claimant has mild limitation. The claimant testified that she drives an automobile for travel, cooks for her live-in boyfriend, shops, washes dishes, does the laundry, runs errands, goes to yard sales, and reads two books per week. The next functional area is social functioning. In this area, the claimant has mild limitation. The claimant lives with her live-in boyfriend, attends church, and goes to the library. There were no reports of criminal violence towards other individuals, no hallucination, and no delusions. The third functional area is concentration, persistence or pace. In this area, the claimant has mild limitation. The claimant had temporary memory loss, but the record showed medications improved the symptoms. Additionally, she reported that she did not need reminders and an MRI of the brain was unremarkable. The fourth functional area is episodes of decompensation. In this area, the claimant has experienced no episodes of decompensation, which have been of extended duration.
>
> Because the claimant's medically determinable mental impairments cause no more than 'mild' limitation in any of the first three functional areas and "no" episodes of decompensation which have been of extended duration in the fourth area, they are nonsevere (20 CFR 404.1520a(d)(1) and 416.920a(d)(1)).

AR 19.

Even if an individual impairment is not sufficiently serious to prevent a person from working, when assessing a claimant's residual functional capacity, an ALJ must consider the combined effect of all of the claimant's impairments on his/her ability to function as well as considering the claimant's subjective symptoms, such as pain or fatigue. *Smolen*, 80 F.3d at 1290. "In assessing RFC, the adjudicator must consider limitations and restrictions imposed by all of an individual's impairments, even those that are not 'severe.'" *Buck*, 869 F.3d at 1049 (quoting *Titles II & XVI: Assessing Residual Functional Capacity in Initial Claims*, SSR 96-8p) (internal quotations omitted). As a result, a claimant's residual functional capacity should be the same whether or not certain impairments are considered severe. *Buck*, 869 F.3d at 1049.

The ALJ in this case acknowledged the distinction between the step two analysis and the more detailed residual functional capacity assessment and addressed the impact of Plaintiff's mental impairments on her residual functional capacity at the close of the step two analysis:

> The limitations identified in the "paragraph B" criteria are not a residual functional capacity assessment but are used to rate the severity of mental impairments at steps 2 and 3 of the sequential

evaluation process. The mental residual functional capacity assessment used at steps 4 and 5 of the sequential evaluation process requires a more detailed assessment by itemizing various functions contained in the broad categories found in paragraph B of the adult mental disorder listings in 12.00 of the Listing of Impairments (SSR 96-8p). Therefore, the following residual functional capacity assessment reflects the degree of limitation the undersigned has found in the "paragraph B" mental functional analysis.

AR 19.

The ALJ noted that Plaintiff herself outlined activities of daily living which limited the persuasiveness of Plaintiff's claimed limitations. AR 20. When viewed as a whole, the hearing decision fully considered the record as a whole including the allegations and evidence of both physical and mental impairments.

## VII. Substantial Evidence Supported the Residual Functional Capacity Determination

Plaintiff contends that the ALJ erred in rejecting the residual functional capacity determination of Dr. Nasrabadi in favor of the ALJ's own independent findings. The Commissioner responds that because the ALJ determined Plaintiff's residual functional capacity in consideration of the evidence as a whole, the determination was supported by substantial evidence.

### A. Medical Opinions

#### 1. Opinions Rendered in Connection with Prior Claims

The record includes two medical opinions of Plaintiff's residual functional capacity prepared in conjunction with one of Plaintiff's earlier disability claims. On December 5, 1996, Psychologist Richard Engeln, Ph.D., performed a consultative psychological evaluation of Plaintiff. AR 288-94. Dr. Engeln opined that Plaintiff "presented with no evidence of any mental or emotional illness." AR 290.

On December 18, 1996, John G. York, M.D., performed a consultative examination and diagnosed chronic low back pain secondary to musculoligamentous sprain/strain. AR 282-86. Range of motion testing was normal in all respects. AR 283-85. Although spinal x-rays revealed

a "very small curvature of the lumbar spine," the lumbar spine was otherwise within normal limits. AR 287. Dr. York opined that Plaintiff had no impairment-related physical limitations. AR 286.

### 2. **Agency Physicians**

The only medical opinions of Plaintiff's recent residual functional capacity were provided by the state agency physicians evaluating Plaintiff's 2013 disability claims. In her January 31, 2013, claims for disability benefits, Plaintiff alleged inability to function because of degenerative disc disease. AR 55. In March 2013, agency physician G. Ikawa, M.D., opined that Plaintiff was capable of light work with decreased stooping, noting that "Currently [claimant's] back pain is reasonably well controlled and she has normal gait and motor." AR 59. In July 2013, Dr. Ikawa added that the evidence indicated that Plaintiff had some elements of depression with associated memory loss, but that antidepressant medication had "stabilized her memory and improved her mood as of 2011." AR 59. Because neither depression nor memory loss were noted in later medical reports, the doctor opined that Plaintiff's mental symptoms were currently nonsevere. AR 59.

Agency physician A. Nasrabadi, M.D., opined that Plaintiff could lift and carry twenty pounds occasionally and ten pounds frequently; sit, stand or walk about six hours in an eight-hour workday; and had unlimited ability to push or pull. AR 62. Accordingly, Dr. Nasrabadi adopted the light residual functional capacity determined in the prior ALJ decision. AR 62. On reconsideration, agency physician S. Bello, M.D., FACC, agreed that Plaintiff's medical records did not support a finding of exacerbations of Plaintiff's physical condition. AR 81-82. Agency psychologist Richard Kaspar, Ph.D., agreed that the medical evidence failed to indicate depression or memory loss after 2011. AR 83.

### B. **The ALJ's Evaluation of Medical Opinions**

"[A]n ALJ is responsible for determining credibility and resolving conflicts in medical testimony." *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989)). An ALJ may choose to give more weight to opinions that are more consistent with the evidence in the record. 20 C.F.R. §§ 404.1527(c)(4), 416.927(c)(4) ("the more consistent an opinion is with the record as a whole,

the more weight we will give to that opinion"). "[I]t is the responsibility of the ALJ, not the claimant's physician, to determine residual functional capacity." *Vertigan v. Halter*, 260 F.3d 1044, 1049 (9th Cir. 2001) (citing 20 C.F.R. § 404.1545). He or she must develop the record, consider the medical evidence and assess whether the combined effect of all of the claimant's impairments constitute a severe impairment. *Howard v. Barnhart*, 341 F.3d 1006, 1012 (9th Cir. 2003).

The opinions of treating physicians, examining physicians, and non-examining physicians are entitled to varying weight in disability determinations. *Lester*, 81 F.3d at 830. Ordinarily, more weight is given to the opinion of a treating professional, who has a greater opportunity to know and observe the patient as an individual. *Id.*; *Smolen*, 80 F.3d at 1285. The opinion of an examining physician is, in turn, entitled to greater weight than the opinion of a non-examining physician. *Pitzer v. Sullivan*, 908 F.2d 502, 506 (9th Cir. 1990). An ALJ may reject an uncontradicted opinion of a treating or examining medical professional only for "clear and convincing" reasons. *Lester*, 81 F.3d at 831. In contrast, a contradicted opinion of a treating professional may be rejected for "specific and legitimate" reasons. *Id.* at 830. However, the opinions of a treating or examining physician are "not necessarily conclusive as to either the physical condition or the ultimate issue of disability." *Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 600 (9th Cir. 1999). In this case, the record includes no contemporary opinions of Plaintiff's recent residual functional capacity from treating or examining physicians.

The opinion of a non-examining physician, such as the agency physicians whose opinions are included here, may constitute substantial evidence when it is "consistent with independent clinical findings or other evidence in the record." *Thomas v. Barnhart*, 278 F.3d 947, 957 (9th Cir. 2002). Such independent reasons may include laboratory test results or contrary reports from examining physicians and Plaintiff's testimony when it conflicts with the treating physician's opinion. *Lester*, 81 F.3d at 831 (citing *Magallanes*, 881 F.2d at 755.

14

Plaintiff contends that the ALJ impermissibly substituted his own judgment for competent medical opinion, implying that the ALJ was bound by the residual functional capacity assessment of Dr. Nasrabadi. Doc. 33 at 8. Plaintiff misunderstands the ALJ's role in determining a claimant's residual functional capacity, and ultimately the claimant's ability to perform work.

"An 'ALJ may not arbitrarily substitute his own judgment for competent medical opinion.'" *Banks v. Barnhart*, 434 F.Supp.2d 800, 805 (C.D. Cal. 2006) (quoting *Balsamo v. Chater*, 142 F.3d 75, 81 (2d Cir. 1998)). When determining a claimant's residual functional capacity, an ALJ may rely on medically accepted clinical diagnoses and objective laboratory findings but may not go outside of the record to medical textbooks to conduct his own exploration and assessment of the claimant's physical condition. *Day v. Weinberger*, 522 F.2d 1154, 1156 (9th Cir. 1975).

The ALJ 's analysis considered all of Plaintiff's reported symptoms and the extent to which the symptoms were reasonable consistent with the objective medical evidence and other evidence in the record, including Plaintiff's testimony and reports of her symptoms and typical activities. AR 20. The ALJ concluded that although Plaintiff's medically determinable impairments could reasonably be expected to cause her alleged symptoms, her representation on the intensity, persistence and limiting effects of those symptoms was not fully credible. AR 20-21. In particular, the ALJ found that Plaintiff's credibility was compromised by objective medical evidence of sparse, infrequent and conservative treatment, and by activities and activities that were not as limited as would be expected of someone with the disabling symptoms and limitations that Plaintiff alleged. AR 22. In addition, the evidence established a "fairly poor work history" in the past relevant fifteen years. AR 22.

The ALJ gave little weight to Dr. Nork's opinion, which was prepared nearly twenty years before the hearing decision and lacked consideration of the totality of Plaintiff's ensuing medical

treatment and activities. AR 21-22. As a result, the only opinions of Plaintiff's residual functional capacity available to the ALJ were those of the agency physicians.[5] The ALJ wrote:

> On July 12, 2013, State agency physical medical consultant, A. Nasrabadi, M.D., reviewed the medical records and opined the claimant could lift and carry 20 pounds occasionally, 10 pounds frequently, stand and walk for 6 hours cumulatively in an 8-hour workday with normal breaks, and sit for 6 hours cumulatively in an 8-hour workday with normal breaks. On February 27, 2014, another State agency physical medical consultant, Sergio Bello, M.D., reviewed the medical records and affirmed the prior assessment. The undersigned gives the State agency physical assessments the most weight, but finds that the lack of objective findings warrants work activity at the medium exertional level. The claimant has degenerative disc disease in the lumbar spine, but diagnostic studies showed mild findings with no stenosis or cord compression. Furthermore, there was normal motor strength, sensation, reflexes and gait. Moreover, medications controlled the symptoms and she was able to ambulate without an assistive device, despite her alleged use of a cane. There were also no recommendations for surgery. The undersigned also finds it appropriate to include postural limitations due to degenerative disc changes.

AR 21 (internal references to record omitted).

In reaching this decision, the ALJ acted appropriately within his responsibility to determine Plaintiff's residual functional capacity from the administrative record as a whole.

Plaintiff adds that the ALJ erred in failing to discuss fully her use of a prescribed cane. Although an ALJ may not selectively analyze the evidence, he or she is not required to discuss every item of evidence. *Howard*, 341 F.3d at 1012. *Cf. Ghanim v. Colvin*, 763 F.3d 1154, 1164 (9th Cir. 2014) (holding that an ALJ may not rely only on evidence supporting a finding that the claimant is not disabled while ignoring evidence supporting the claim of disability). As is apparent in the quotation above of the ALJ's decision, the ALJ concluded that Plaintiff was able to ambulate without the use of an assistive device. Nothing further was required.

As is always the case in an appeal of the Commissioner's denial of disability benefits, Plaintiff would construe the evidence differently than the ALJ. Nonetheless, the ALJ's analysis complied with the legal principles set forth above which guided her analysis of the evidence in

///

---

[5] Plaintiff does not contend that the Commissioner should have more fully developed the record.

this case. Even if the evidence could arguably support Plaintiff's interpretations the Court may not substitute its judgment for that of the Commissioner. *Jamerson*, 112 F.3d at 1066.

### III. Conclusion and Order

Based on the foregoing, the Court finds that the ALJ's decision that Plaintiff is not disabled is supported by substantial evidence in the record as a whole and is based on proper legal standards. Accordingly, this Court DENIES Plaintiff's appeal from the administrative decision of the Commissioner of Social Security. The Clerk of Court is directed to enter judgment in favor of Defendant Nancy A. Berryhill, Acting Commissioner of Social Security, and against Plaintiff Kathlene Veltkamp.

IT IS SO ORDERED.

Dated: **February 12, 2019**        **/s/ Gary S. Austin**
UNITED STATES MAGISTRATE JUDGE